UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAC WILLIAM BISHOP and
CHRISTOPHER CHIVERS,

        Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

        Defendant.

13 Civ. 8620 (GWG)

# MEMORANDUM OF LAW IN SUPPORT OF THE
# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd floor
New York, New York 10007
Tel.: (212) 637-2679
Fax: (212) 637-2717
E-mail: Jean-David Barnea@usdoj.gov

JEAN-DAVID BARNEA
Assistant United States Attorney

    – Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..........................................................................................................................1

ARGUMENT ................................................................................................................................2

I.     This Action May Be Resolved on a Summary Judgment Motion .......................................2

II.     DHS Properly Withheld the Documents and Information at Issue Under FOIA Exemption 7(E) ...............................................................................................................4

    A.     The Contested Documents Were Compiled for Law Enforcement Purposes ..........5

    B.     Producing the Contested Documents in Full Would Disclose Techniques and Procedures for Law Enforcement Investigations ...............................................5

    C.     Producing the Contested Documents in Full Would Disclose Law Enforcement Guidelines the Disclosure of Which Could Reasonably Be Expected to Risk Circumvention of the Law ............................................................8

CONCLUSION ...........................................................................................................................12

# TABLE OF AUTHORITIES

**Cases** **Page**

*Allard K. Lowenstein Int'l Human Rights Project v. DHS*,
    626 F.3d 678 (2d Cir. 2010)..................................................................................4, 5

*Am. Immigration Lawyers Ass'n v. DHS*,
    852 F. Supp. 2d 66 (D.D.C. 2012)........................................................................6, 10

*Associated Press v. U.S. Dep't of Justice*,
    549 F.3d 62 (2d Cir. 2008)............................................................................................3

*Barnard v. DHS*,
    598 F. Supp. 2d 1 (D.D.C. 2009)....................................................................4, 6, 10

*Carney v. U.S. Dep't of Justice*,
    19 F.3d 807 (2d Cir. 1994)............................................................................................3

*Dorsett v. U.S. Dep't of Treasury*,
    307 F. Supp. 2d 28 (D.D.C. 2004) ..............................................................................11

*Elec. Frontier Found. v. DHS*,
    No. C 12-5580 PJH, 2014 WL 1320234 (N.D. Cal. Mar. 31, 2014) ............................10

*Gordon v. FBI*,
    388 F. Supp. 2d 1028 (N.D. Cal. 2005) ......................................................................10

*Grand Cent. P'ship, Inc. v. Cuomo*,
    166 F.3d 473 (2d Cir. 1999)..........................................................................................3

*Halpern v. FBI*,
    181 F.3d 279 (2d Cir. 1999)..........................................................................................3

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
    337 F. Supp. 2d 146 (D.D.C. 2004) ..............................................................................4

*Lazaridis v. U.S. Dep't of State*,
    958 F. Supp. 2d 206 (D.D.C. 2013) ..............................................................................7

*Marcusse v. U.S. Dep't of Justice Off. of Information Policy*,
   959 F. Supp. 2d 130 (D.D.C. 2013) ...................................................................................7

*Mobley v. CIA*,
   924 F. Supp. 2d 24 (D.D.C. 2013) .....................................................................................7

*NLRB v. Robbins Tire & Rubber Co.*,
   437 U.S. 214 (1978) ..........................................................................................................2

*N.Y. Times Co. v. U.S. Dep't of Justice*,
   872 F. Supp. 2d 309 (S.D.N.Y. 2012) ................................................................................1

*Skinner v. U.S. Dep't of Justice*,
   806 F. Supp. 2d 105 (D.D.C. 2011) .................................................................................10

*Strunk v. U.S. Dep't of State*,
   905 F. Supp. 2d 142 (D.D.C. 2012) ...............................................................................5, 9

**Statutes & Rules**

Freedom of Information Act, 5 U.S.C. § 552 ............................................................................1

   5 U.S.C. § 552(a) ..............................................................................................................2

   5 U.S.C. § 552(a)(4)(B) ....................................................................................................3

   5 U.S.C. § 552(b) ..............................................................................................................3

   5 U.S.C. § 552(b)(7) .........................................................................................................5

   5 U.S.C. § 552(b)(7)(E) ........................................................................................1, 4, 5, 9

Fed. R. Civ. P. 56(a) ...................................................................................................................3

## PRELIMINARY STATEMENT

Defendant the United States Department of Homeland Security ("DHS"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, as against the claims filed by plaintiffs Mac William Bishop and Christopher Chivers ("Plaintiffs") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). For the reasons explained below, DHS properly withheld certain information from the documents it produced to Plaintiffs pursuant to FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E).

## BACKGROUND[1]

Plaintiffs filed FOIA requests, dated June 27, 2013 and July 10, 2013, respectively, seeking DHS records relating to them, after having been questioned by federal agents at John F. Kennedy International Airport ("JFK"). *See* Compl. [Docket No. 1] ¶¶ 4, 12, 17. DHS did not produce any responsive records during the administrative processing of their request as a result of searches of the Transportation Security Administration and U.S. Immigration and Customs Enforcement, both components of DHS. *See id.* ¶¶ 12-25. In their subsequent complaint, filed in this Court on December 4, 2013, Plaintiffs identified U.S. Customs and Border Protection ("CBP") as a DHS component whose records they wished to include in DHS's searches. *See id.* ¶¶ 15, 18. CBP then conducted two sets of searches for responsive documents, and made

---

[1] In accordance with the general practice in this Circuit, DHS has not submitted a statement pursuant to Local Civil Rule 56.1. *See N.Y. Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) ("'[T]he general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment,' and Local Civil Rule 56.1 statements are not required.") (quoting *Ferguson v. FBI*, 89 Civ. 5071 (RPP), 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), *aff'd*, 83 F.3d 41 (2d Cir. 1996)). If the Court wishes DHS to submit such a statement, it will do so promptly.

productions of documents responsive to Plaintiffs' requests on January 9, 2014, and February 20, 2014. *See* Declaration of Laurence E. Castelli, dated April 18, 2014 ("Castelli Decl.") ¶¶ 11, 14.

These productions consisted of the following:

- 156 pages of documents relating to the two Plaintiffs from CBP's TECS (not an acronym) system, which "is an overarching law enforcement information collection, analysis and sharing environment, comprised of several modules designed to collect, maintain and screen data as well as conduct analysis, screening and information sharing to facilitate the law enforcement and antiterrorism mission of CBP," *id.* ¶¶ 8, 11;

- 105 pages of documents (plus two pages withheld in full) relating to the two Plaintiffs from CBP's Automated Targeting System ("ATS"), a system that "employs a common approach for data management, analysis, rules-based risk management, and user interfaces," and which includes the ATS-P module that "maintains [Passenger Name Record] data regarding persons traveling to and from the United States on commercial air carriers," *id.* ¶¶ 12-14; and

- 4 one-page records from CBP's JFK files that included handwritten material relating to the two Plaintiffs, *see id.* ¶ 14.

Plaintiffs have indicated that they wish to challenge only certain redactions on certain pages within these productions. *See id.* ¶ 15. Specifically, Plaintiffs have stated that they are contesting some of the redactions on 29 pages of TECS records and CBP's withholding of the two one-page ATS documents that were denied in full. *See id.* ¶ 15 & Ex. B. Only the contested withholdings are further discussed herein. *See also id.* ¶ 5 & Ex. A (*Vaughn* index describing redactions on contested documents); *id.* ¶ 15 & Ex. C (copies of documents at issue as produced to Plaintiffs).

**ARGUMENT**

**I.     This Action May Be Resolved on a Summary Judgment Motion**

FOIA was enacted to "ensure an informed citizenry, . . . needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The statute requires each federal agency to make

available to the public an array of information, and sets forth procedures by which requesters may obtain such information. *See* 5 U.S.C. § 552(a). At the same time, FOIA exempts nine categories of information from disclosure, while providing that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt under this subsection." *Id.* § 552(b). FOIA thus "calls for broad disclosure of [g]overnment records, while maintaining a balance between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Associated Press v. U.S. Dep't of Justice*, 549 F.3d 62, 64 (2d Cir. 2008) (citations and internal quotation marks omitted).

Summary judgment is the procedural vehicle by which most FOIA actions are resolved. *See, e.g.*, *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). Summary judgment may be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In order to prevail on a motion for summary judgment in a FOIA case, the defendant agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to FOIA." *Carney*, 19 F.3d at 812. "Affidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Id.* (footnote omitted); *see also Halpern v. FBI*, 181 F.3d 279, 291 (2d Cir. 1999) (same). Although this Court reviews *de novo* the agency's determination that requested information falls within a FOIA exemption, *see* 5 U.S.C. § 552(a)(4)(B); *Halpern*, 181 F.3d at 287, the declarations submitted by the agency in support of its determination are "accorded a presumption of good faith," *Carney*, 19 F.3d at 812 (citation and internal quotation marks omitted).

In support of its motion, DHS has submitted the declaration of Laurence Castelli. This declaration is non-conclusory, providing details regarding CBP's identification of responsive records, application of FOIA exemptions, and production of records to Plaintiffs, and is thus sufficient to sustain DHS's burden under Rule 56.

## II. DHS Properly Withheld the Documents and Information at Issue Under FOIA Exemption 7(E)

Exemption 7(E) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . [1] would disclose techniques and procedures for law enforcement investigations or prosecutions, or [2] would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

The first clause of Exemption 7(E) provides categorical protection to information that "would disclose techniques and procedures for law enforcement investigations or prosecutions," without requiring any showing of harm as a result of disclosure. *Id.* "[T]he qualifying phrase ('if such disclosure could reasonably be expected to risk circumvention of the law') modifies only 'guidelines' and not 'techniques and procedures.'" *Allard K. Lowenstein Int'l Human Rights Project v. DHS*, 626 F.3d 678, 681 (2d Cir. 2010); *see also Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004) (first clause of Exemption 7(E) provides "categorical protection" for law enforcement techniques and procedures). While the first clause of this exemption is generally limited to techniques or procedures that are not well-known to the public, "[t]here is no principle . . . that requires an agency to release all details concerning . . . techniques simply because some aspects of them are known to the public." *Barnard v. DHS*, 598 F. Supp. 2d 1, 23 (D.D.C. 2009).

4

The second clause of Exemption 7(E) protects "guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see Allard K. Lowenstein Int'l Human Rights Project*, 626 F.3d at 681.

DHS properly withheld material from the contested documents because the material was compiled for law enforcement purposes and would reveal techniques or procedures for law enforcement investigations or prosecutions, and law enforcement guidelines the disclosure of which could reasonably be expected to risk circumvention of the law.

### A. The Contested Documents Were Compiled for Law Enforcement Purposes

The TECS records and the ATS records meet Exemption 7's threshold requirement of being "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Both sets of documents reflect information from law enforcement databases, *see* Castelli Decl. ¶¶ 8, 13, that "w[as] compiled for law enforcement purposes in that the information is collected and used by CBP in its mission to secure the border of the United States," *id.* ¶ 17; *see also id.* ¶ 24. Numerous decisions have recognized that law-enforcement databases such as these satisfy this requirement. *See, e.g.*, *Strunk v. U.S. Dep't of State*, 905 F. Supp. 2d 142, 148-49 (D.D.C. 2012) (collecting cases). Here, the contested documents likewise satisfy the threshold condition for withholding under Exemption 7.

### B. Producing the Contested Documents in Full Would Disclose Techniques and Procedures for Law Enforcement Investigations

CBP withheld certain information from the TECS documents and the two ATS documents pursuant to Exemption 7(E) because each type of document revealed specific law enforcement techniques and procedures. *See* Castelli Decl. ¶¶ 19-25. In all of the TECS documents, CBP redacted the "RSLT" field, which shows "the results of specific law

enforcement database queries used by officers in determining if certain law enforcement actions should be conducted." *Id.* ¶ 19. Furthermore, certain TECS documents (the "Secondary Inspection Reports") also contain additional information relating to "investigative techniques used by CBP, including examination and inspection procedures and internal reporting requirements." *Id.* ¶ 20. Finally, the withheld ATS documents reflect CBP's automated analysis "that allows CBP officers to focus efforts on potentially high-risk passengers by eliminating labor-intensive manual reviews of traveler information or interviews with every traveler. The assessment process is based on a set of national and user-defined rules based on specific operational, tactical, intelligence, or local enforcement efforts." *Id.* ¶ 23. In sum, all of the withheld documents or portions of documents relate to CBP's use of databases and other information in an effort to decide which airline passengers should be subject to further inspection, and, when such passengers are identified, which investigative techniques are used.

While Plaintiffs may argue that it is well known that CBP, like other law-enforcement agencies that operate at U.S. airports and border crossings, use information stored in databases or computer programs to assess passengers, this is not sufficient to merit disclosure of the documents at issue. This is because the actual information used by CBP — the particular criteria by which CBP decides whether a particular passenger should be subject to heightened scrutiny, the manner in which the CBP databases display any such information, and the specific techniques CBP uses to examine such passengers — are not publicly known. *See id.* ¶¶ 19-25.

Under the first clause of Exemption 7(E), DHS is not required to "release all details concerning . . . techniques simply because some aspects of them are known to the public," *Barnard*, 598 F. Supp. 2d at 23, and "even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness," *Am. Immigration*

6

*Lawyers Ass'n v. DHS*, 852 F. Supp. 2d 66, 78 (D.D.C. 2012). In one case, a court upheld under the first paragraph of Exemption 7(E) the withholding of information from an agency's "name check database" based on the agency's explanation that "[w]hile the public may generally be aware that 'name checks' are conducted, the withheld information consists of sensitive details about such name check databases or procedures that are not publicly known." *Mobley v. CIA*, 924 F. Supp. 2d 24, 63-64 (D.D.C. 2013) (internal quotation marks omitted). In another case, a court upheld an agency's refusal to produce "a computer printout from a secure State Department passport database . . . used in this context to track the use of a passport [that] was prepared in connection with an investigation . . . [and] contains indicators for the 'Reason' for the report and 'Source' of its generation, which are details of a law enforcement technique used to alert other federal agencies . . . about pending fugitive investigations and the cross-border movement of abducted minors." *Lazaridis v. U.S. Dep't of State*, 958 F. Supp. 2d 206, 207 (D.D.C. 2013) (citations and internal quotation marks omitted; some alterations in original). Indeed, a court has affirmed an agency's refusal to reveal information about one of its databases — even though "the information contained in the sources is publicly available"; it credited the agency's assertion that "the manner in which the data is searched, organized and reported to the FBI as an internal technique [is] not known to the public." *Marcusse v. U.S. Dep't of Justice Off. of Info. Policy*, 959 F. Supp. 2d 130, 147 (D.D.C. 2013) (alteration in original, internal quotation marks omitted).

Because the material withheld from the contested documents would disclose law enforcement techniques and the ways and circumstances in which they are employed, the material is categorically exempt from disclosure under the first clause of Exemption 7(E).

### C. Producing the Contested Documents in Full Would Disclose Law Enforcement Guidelines the Disclosure of Which Could Reasonably Be Expected to Risk Circumvention of the Law

DHS has also demonstrated that the TECS and ATS records contain guidelines related to law enforcement investigations and prosecutions that are not publicly known and that would be reasonably likely to risk circumvention of the law if publicly disclosed. *See* Castelli Decl. ¶¶ 19-25. As mentioned, the TECS documents all contain a "RSLT" field that displays "the results of specific law enforcement database queries used by officers in determining if certain law enforcement actions should be conducted," *id.* ¶ 19, and the TECS Secondary Inspection reports further contain "examination and inspection procedures and internal reporting requirements," such as the "Reason for Referral" to secondary inspection by CBP, *id.* ¶ 20. The contested ATS documents, in turn, "combine[] the information provided by airlines with law enforcement and intelligence information, and displays this combined data in a law-enforcement-sensitive format, showing the importance that CBP places on different elements and factors in making law enforcement decisions, as well as the law-enforcement-sensitive information underlying such decision-making." *Id.* ¶ 23.

DHS properly determined that the withheld material from the contested documents should be withheld under the second clause of Exemption 7(E) because disclosure of such information could risk circumvention of CBP's law enforcement efforts, and in particular would enable airline passengers to alter their conduct in such a way as to avoid the scrutiny of CBP officers. Thus, disclosing the "RSLT" information on the TECS documents would be problematic because "[i]f individuals knew the results of queries of relevant databases, this would permit individuals to alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate other countermeasures, thus, corrupting the integrity of ongoing techniques, operations and investigations, and potentially compromising officer

safety." *Id.* ¶ 19. Similarly, "public awareness" of the redacted "operational information" on the Secondary Inspection reports "would aid those who seek to circumvent CBP operations and thus harm the agency's ability to enforce the laws of the United States." *Id.* ¶ 20. And, with respect to the ATS records, "[n]o information from these . . . records can be released without disclosing law-enforcement-sensitive information or revealing critical law enforcement techniques, including factors that are considered in identifying individuals who will be subject to additional review. Release of such information could be used by potential violators to develop countermeasures to evade detection, inspection, and targeting methods, thus significantly compromising CBP's ability to effectively carry out its border security responsibilities." *Id.* ¶ 25.

Courts have held that these types of law enforcement databases, and the criteria they establish for law enforcement activities such as identifying particular individuals for further scrutiny, reflect law enforcement guidelines that are protected under the second clause of Exemption 7(E); indeed, courts have reached this conclusion specifically with respect to information from the TECS and ATS databases. Thus, in the *Strunk* case cited above, the Court concluded that "the CBP's declarant adequately demonstrate[d] that release of the [TECS] codes, as well as the information in the RSLT column, 'would disclose guidelines for law enforcement investigations or prosecutions,'" that "'such disclosure could reasonably be expected to risk circumvention of the law,'" and thus that "[t]he CBP thus demonstrate[d] that its decision to withhold the TECS-related information under Exemption 7(E) is proper." 905 F. Supp. 2d at 148 (quoting 5 U.S.C. § 552(b)(7)(E)). In another case, the court allowed an agency to withhold a "TECS screen printout [that] contains a 'all-points bulletin' regarding an ongoing criminal law enforcement operation; a brief profile of the subject of this communication, including his

9

involvement, habits and level of threat; subject tracking; and actions to be taken by law enforcement agents stationed at check points if subjects are encountered" because "[r]elease of this information to plaintiff, . . . will have the unintended and undesirable result of placing the same information at the disposal of other subjects of investigation(s), assisting them to evade detection and apprehension by alerting them to the investigation techniques used to aid the underlying law enforcement operation and, thereby, impair the effectiveness of those law enforcement techniques." *Skinner v. U.S. Dep't of Justice*, 806 F. Supp. 2d 105, 115-16 (D.D.C. 2011) (internal quotation marks omitted); *see also Barnard*, 598 F. Supp. 2d at 14-17 (approving withholding of TECS and ATS-P records after reviewing *in camera* submissions by CBP).

Indeed, courts have routinely sided with law-enforcement agencies with respect to their withholding of documents that embody the guidelines that the agencies use to identify potential threats and the methods for dealing with such threats. Thus, courts have approved the withholding of an agency's "(1) watch list selection criteria; (2) procedures for dissemination of watch lists; (3) procedures for handling potential/actual name matches; (4) raising/addressing perceived problems in security measures; and (5) compilation of watch lists (involving such things as the adding or removing of names)." *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1035-36 (N.D. Cal. 2005). Another court upheld, under Exemption 7(E), the withholding of a document that "reveals very particular and sensitive criteria (fraud indicators) used by adjudicators to determine which cases of suspected [immigration visa] fraud to refer for further investigation" because "[a]nyone in possession of this document would have, essentially, a roadmap by which they could follow to avoid attracting attention and close scrutiny by . . . engaging in any number of . . . ploys designed to deceive immigration and law enforcement authorities." *Am. Immigration Lawyers Ass'n* , 852 F. Supp. 2d at 77-78 (internal quotation marks omitted); *see*

10

*also Elec. Frontier Found. v. DHS*, No. C 12-5580 PJH, 2014 WL 1320234, at *7 (N.D. Cal. Mar. 31, 2014) (concluding that "release of . . . operational information — which includes CBP's methods for identifying and analyzing threats, as well as drone capabilities and vulnerabilities — would . . . disclose techniques and procedures for law enforcement, thus entitling the information to protection under exemption 7(E)," and thus denied release of the information because "[b]y revealing the criteria used by CBP to assess threats, and the capabilities and vulnerabilities of CBP drones, the information would allow persons to avoid detection and exploit vulnerabilities."); *cf. Dorsett v. U.S. Dep't of Treasury*, 307 F. Supp. 2d 28, 36, 39 n.11 (D.D.C. 2004) (upholding, under FOIA Exemption 2, the withholding of a document "used by the Secret Service to analyze and profile factual information concerning individuals who have come to the attention of the Secret Service [that] could be used to gain insight into the methods and criteria the Secret Service utilizes to identify and investigate persons of interest, and could alter such individuals' behavior to avoid detection," and explaining that the agency also sought to withhold the document under Exemption 7(E)).

Because disclosure of guidelines concerning CBP's investigative techniques in the contested documents "could reasonably be expected to risk circumvention of the law," DHS properly withheld the contested information from the documents at issue under the second clause of Exemption 7(E).

Finally, DHS reviewed the contested documents for segregability, identified the portions not exempt from disclosure under Exemption 7(E) that could be reasonably segregated from the exempt portions, and determined that those portions would be released to Plaintiffs. Castelli Decl. ¶ 26. Accordingly, all reasonably segregable, non-exempt information from the contested documents was released to Plaintiffs. *Id.*

## CONCLUSION

For the foregoing reasons, DHS respectfully requests that the Court grant its motion for summary judgment.

Dated: New York, New York
April 21, 2014

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By:    s/Jean-David Barnea
JEAN-DAVID BARNEA
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2679
Fax: (212) 637-2717
Email: Jean-David.Barnea@usdoj.gov