UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAC WILLIAM BISHOP and
CHRISTOPHER CHIVERS,

        Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

        Defendant.

13 Civ. 8620 (GWG)


# REPLY MEMORANDUM OF LAW IN FURTHER
# SUPPORT OF THE DEFENDANT'S MOTION FOR
# SUMMARY JUDGMENT

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd floor
New York, New York 10007
Tel.: (212) 637-2679
Fax: (212) 637-2717
E-mail: Jean-David Barnea@usdoj.gov

JEAN-DAVID BARNEA
Assistant United States Attorney

   – Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT .......................................................................................................................1

    I.      CBP Properly Withheld Information in the "RSLT" Column of the TECS Documents ...................................................................................................2

    II.     CBP Properly Withheld Information in the TECS Secondary Inspection Reports .............3

    III.    CBP Properly Withheld the Two ATS-P Documents.........................................................5

CONCLUSION....................................................................................................................7

**PRELIMINARY STATEMENT**

Defendant the United States Department of Homeland Security, by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in further support of its motion for summary judgment. For the reasons explained below and in DHS's opening brief, DHS properly withheld certain information from the documents it produced to Plaintiffs pursuant to FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E).[1]

**ARGUMENT**

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing . . . that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). An agency's declaration "giving reasonably detailed explanations why any withheld documents fall within an exemption [is] sufficient to sustain the agency's burden." *Id.* Further, such a declaration "submitted by an agency [is] accorded a presumption of good faith." *Id.* (internal quotation marks omitted).

DHS withheld — and justified the withholding of — information in three categories of documents, as described in the Declaration of Laurence E. Castelli submitted in connection with DHS's original motion papers ("Castelli Decl.") and as further explained in the supplemental declaration of Mr. Castelli submitted herewith ("Supp. Castelli Decl."): (1) redacted information in the "RSLT" column of the TECS reports for Plaintiffs; (2) redacted information in the TECS Secondary Inspection Reports; and (3) the two withheld-in-full pages of information from the ATS-P system. These are discussed in turn herein.

---

[1] This memorandum uses capitalized terms and abbreviations defined in DHS's opening brief, which is itself cited as "Br." Plaintiffs' opposition brief is cited as "Opp."

## I. CBP Properly Withheld Information in the "RSLT" Column of the TECS Documents

As explained in DHS's moving papers, the information in the redacted RSLT column of the TECS documents was properly redacted because it shows "'the results of specific law enforcement database queries used by [CBP] officers in determining if certain law enforcement actions should be conducted.'" Br. at 5-6 (quoting Castelli Decl. ¶ 19). Plaintiffs speculate that revealing what they believe might be only "little more than some numbers or letters" would not "provide any information about a government technique or procedure or use to a criminal or terrorist." Opp. at 10. Plaintiffs are correct that the information in the RSLT column (only a few characters wide) is presented in "abbreviated form," but disclosure of this information would nevertheless reveal "the names of the law enforcement databases that were queried by CBP relating to the two Plaintiffs and the results of those queries." Supp. Castelli Decl. ¶ 4.

Contrary to Plaintiffs' assertion, the information in the RSLT column "is . . . connected . . . to security sensitive information [and] discloses a[] law enforcement technique." Opp. at 10. As Mr. Castelli explains, summarizing information from DHS's publicly available Privacy Act assessment for the TECS system, "TECS query capabilities can be used to analyze data from various sources to assist authorized users in the identification of areas of law enforcement interest, concern, or relationships indicating the possible presence of such interests/concerns." Supp. Castelli Decl. ¶ 2 (citing U.S. Dep't of Homeland Security, *Privacy Impact Assessment, TECS System; CBP Primary and Secondary Processing*, at 12 (Dec. 22, 2010), *available at* http://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_cbp_tecs.pdf). Specifically, the RSLT column, as explained above, includes the "results" of queries of law-enforcement databases by CBP regarding Plaintiffs. *Id.* ¶ 4.

CBP is not required to publicly identify the particular law-enforcement database or databases that it queries regarding passengers, nor must it reveal the particular shorthand method in which any such results are displayed in the TECS database printouts, in order to justify its withholding of this information. Indeed, CBP's declarations establish that if air passengers knew the specific databases queried by CBP as part of this process and what types of results in those databases signaled to CBP agents that they should focus further attention on a given passenger, it would "permit individuals to alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate other countermeasures, thus, corrupting the integrity of ongoing techniques, operations and investigations, and potentially compromising officer safety." Castelli Decl. ¶ 19.

CBP has thus adequately justified the redaction of the information in the RSLT column pursuant to FOIA Exemption 7(E).

## II. CBP Properly Withheld Information in the TECS Secondary Inspection Reports

CBP also properly withheld information from the TECS Secondary Inspection Reports relating to both Plaintiffs. The redacted information relates to "investigative techniques used by CBP, including examination and inspection procedures and internal reporting requirements," *id.* ¶ 20, and more specifically to "the specific results of law enforcement database queries that may prompt CBP to select certain travelers for further examination, and the specific law enforcement techniques that CBP officers utilize use while conducting secondary inspections," Supp. Castelli Decl. ¶ 5.

Again, CBP should not have to publicly reveal the particular law-enforcement database or databases it searches regarding air passengers, or the results of those searches with regard to Plaintiffs that led it to conduct secondary inspections of Plaintiffs. Nor should CBP have to publicly reveal "the specific law enforcement techniques that CBP officers utilize use while

3

conducting secondary inspections." Supp. Castelli Decl. ¶ 5. CBP's declarations amply demonstrate that this information could enable persons wishing to avoid law enforcement scrutiny to attempt to tailor their behavior in a way that would subvert CBP's mission. *See id.* ("This information cannot be disclosed to the Plaintiffs without identifying law enforcement techniques, including factors and investigatory material considered by CBP in determining whether travelers should be subject to additional scrutiny when they cross the U.S border.").

Plaintiffs argue that CBP has failed to adequately "address[] whether the techniques or procedures are truly unknown to the general public — a general public that now has a broad understanding of security protocols at airports in the post-9/11 world." Opp. at 12. Indeed, the increased law enforcement presence at airports in the past decade is certainly well known, as is the presence of uniformed CBP officers. But Plaintiffs point to no evidence, nor is CBP aware of any, that it is "generally known" what particular law-enforcement databases CBP queries relating to passengers, or what particular results of those database queries may lead CBP to select a passenger for secondary inspection, or what investigative techniques CBP officers may use in conducting such secondary inspections. *See generally Ahmed v. U.S. Citizenship & Immig. Servs.*, No. 11-cv-6230 (CBA), 2013 WL 27697, at *4 (E.D.N.Y. Jan. 2, 2013) ("Exemption (b)(7)(E) is limited to 'techniques and procedures not generally known to the public.'" (quoting *Doherty v. U.S. Dep't of Justice*, 775 F.2d 49, 52 & n.4 (2d Cir. 1985))).[2]

For these reasons, CBP has adequately justified the redaction of the information in the Secondary Inspection Reports pursuant to FOIA Exemption 7(E).

---

[2] Plaintiffs' purported "concern that these stops were targeted at the Journalists because they are journalists going to a part of the world where the Government faces difficult foreign-policy choices," Opp. at 13, in addition to being entirely unsupported and speculative, is irrelevant. This is a FOIA case, and accordingly the only pertinent question is whether CBP has supplied adequate information in its declarations and *Vaughn* index to justify the withholding of the documents at issue — which it has.

**III. CBP Properly Withheld the Two ATS-P Documents**

Finally, CBP has adequately justified its withholding in full of two one-page documents from its ATS-P system relating to Plaintiffs. These documents, like the TECS documents discussed above, relate to CBP's efforts to locate "potentially high-risk passengers . . . based on a set of national and user-defined rules based on specific operational, tactical, intelligence, or local enforcement efforts." Castelli Decl. ¶ 23. As explained in greater detail in CBP's publicly available Privacy Act assessment for the ATS system, "'ATS-P augments the CBP officer's decision-making process about whether a traveler or crew member should receive additional screening. . . . [ATS-P] compares PII [(Personally Identifiable Information (PII)]… against lookouts and patterns of suspicious activity identified through past investigations and intelligence. This analysis is done in advance of a traveler's arrival in or departure from the United States and becomes one tool available to DHS officers in identifying illegal activity.'" Supp. Castelli Decl. ¶¶ 8-9 (quoting U.S. Dep't of Homeland Security, *Privacy Impact Assessment, Automated Targeting System*, DHS/CBP/PIA-006(b), at 18 (June 1, 2012) [hereinafter "ATS Privacy Act Assessment"], *available at* http://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_cbp_ats006b.pdf).

CBP released to Plaintiffs over a hundred pages of information from the ATS system, consisting of their Passenger Name Records. *See id.* ¶ 11 & n.2. But CBP does not make public "information concerning 'the targeting rules, the responses to rules, case events, law enforcement and/or intelligence data, reports, and projects developed by CBP analysts that may include public source information, information obtained through memoranda of understanding or other arrangements because the information is relevant to the border security mission of the Department, or records exempted from access by the system from which ATS ingested or accessed the information.'" *Id.* ¶ 10 (quoting ATS Privacy Act Assessment, at 29).

5

In response to Plaintiffs' litany of questions, *see* Opp. at 14-15, CBP can confirm that one of the withheld pages "is a record from ATS that is responsive to Mr. Bishop's request, while [the other page] is a record from ATS responsive to Mr. Chivers's request." Supp. Castelli Decl. ¶ 6. Plaintiffs' remaining questions, however, concern the particulars of the documents at issue: who created them and when, what information they contain about Plaintiffs, etc. *See* Opp. at 14-15. These are questions that cannot be answered on the public record, as doing so would "reveal law enforcement techniques, including factors and investigatory material considered by CBP when identifying potentially high-risk travelers who may be subject to additional scrutiny when they cross the U.S border." Supp. Castelli Decl. ¶ 11.

Nor is it necessary for CBP to provide this level of information about these documents in order to justify their withholding: CBP has proffered declarations attesting that these records contain information that would "reveal . . . factors and investigatory material considered by CBP when identifying potentially high-risk travelers." *Id.* This is sufficient to uphold CBP's burden under FOIA. *See Carney*, 19 F.3d at 812. The precise format in which this information is presented in the documents at issue — whether it includes a generic list of factors, an application of those factors to Plaintiffs, or something else entirely; or whether it includes information collected by CBP officers at the airport, information from the ATS-P computer system, and/or information from other sources, *cf.* Opp. at 15 — does not change this conclusion.

CBP has thus adequately justified its withholding of the two ATS-P documents pursuant to FOIA Exemption 7(E).

## CONCLUSION

For the foregoing reasons, and for the reasons stated in DHS's opening brief, DHS respectfully requests that the Court grant its motion for summary judgment.

Dated: New York, New York
June 2, 2014

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By:    s/Jean-David Barnea
JEAN-DAVID BARNEA
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2679
Fax: (212) 637-2717
Email: Jean-David.Barnea@usdoj.gov