UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MAC WILLIAM BISHOP and
CHRISTOPHER CHIVERS,

                Plaintiffs,

                    13 Civ. 8620 (GWG)

            - against -

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

                Defendant.
---------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF PLAINTIFFS'
# CROSS-MOTION FOR SUMMARY JUDGMENT
# AND IN OPPOSITION TO DEFENDANT'S
# <u>MOTION FOR SUMMARY JUDGMENT</u>

David E. McCraw, Esq.
D. Victoria Baranetsky, Esq.
The New York Times Company
Legal Department
620 Eighth Avenue
New York, NY 10018
Phone: (212) 556-4031
Facsimile: (212) 556-1009
Email: mccraw@nytimes.com

*Counsel for Plaintiffs*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................i

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT....................................................................................................................1

    I.    ATS REPORTS: THE GOVERNMENT HAS NOT ADDRESSED PLAINTIFFS' LEGITIMATE QUESTIONS ABOUT THE NATURE OF THE ATS REPORTS NOR SHOWN THAT DISCLOSURE OF THE REPORTS WOULD REASONABLY RISK CIRCUMVENTION OF THE LAW UNDER EXEMPTION 7(E) ..................................................................................................................2

    II.    RESULT REDACTIONS: THE GOVERNMENT HAS NOT SHOW THAT DISCLOSURE OF THE RESULT REDACTIONS WOULD REVEAL HOW LAW ENFORCEMENT INVESTIGATES A CRIME ............................................4

    III.    SECONDARY INSPECTION REPORTS: THE GOVERNMENT HAS NOT SHOWN THAT DISCLOSURE OF THE SECONDARY INSPECTION REPORTS WOULD REVEAL INFORMATION THAT IS NOT ALREADY GENERALLY KNOWN TO THE PUBLIC .............................................................................5

    IV.    *IN CAMERA* REVIEW IS APPROPRIATE UNDER THESE CIRCUMSTANCES. ....................................................................................7

CONCLUSION.................................................................................................................8

## PRELIMINARY STATEMENT

Plaintiffs Mac William Bishop and Christopher Chivers (the "Journalists") respectfully submit this reply memorandum of law in further support of their cross-motion for summary judgment and in opposition to Defendant's motion for summary judgment.

## ARGUMENT

Although Defendant the Department of Homeland Security ("DHS" or the "Government") has now submitted two declarations in support of its motion for summary judgment and two additional exhibits, totaling 83 pages, it has failed to justify legally or factually the decision to withhold the information and documents at issue pursuant to FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E).[1] First, DHS still does not provide even a rudimentary description of the nature of the completely withheld ATS Reports – thereby stripping Plaintiffs and the Court of any basis for assessing whether the exemption applies or not. Second, DHS has denied Plaintiffs and this Court more "detailed and specific information" about *how* disclosure of the Result Redactions may reveal a technique or procedure. *See King v. U.S. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987). Third, the Government similarly fails to demonstrate that the techniques that would be revealed in the Secondary Inspection Reports are not generally known to the public.[2]

---

[1] Exemption 7(E) protects from disclosure of records compiled for law enforcement purposes to the extent that disclosure would reveal "techniques and procedures." 5 U.S.C. § 552(b)(7)(E).
[2] The Government also relegates the Journalists' concerns over targeted surveillance to a footnote on page four and dismisses them on page six as "unsupported," "speculative," and "irrelevant." But the statements made by Mr. Castelli that "[d]isclosure of this information would reveal law enforcement techniques, including factors and investigatory material considered by CBP when identifying *potentially high-risk travelers* who may be subject to additional scrutiny when they cross the border" seem to undercut the Government's claims that

1

This meager showing by the Government does not carry its burden of proof as required by the law of this Circuit and others. *See Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (stating the Government's affidavits must be sufficiently detailed to carry the agency's burden of proof); *accord, Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190-91 (2d Cir. 2012) (same); *King*, 830 F.2d at 217 (same). But if there is any doubt about that, the Journalists' alternative request for relief is appropriate: that this Court review *in camera* the documents to determine whether the information is properly withheld. *See N.Y. Times Co. v. United States*, No. 13-422(L), 13-445 (Con), 2014 U.S. App. Lexis 7387 (2d Cir. Apr. 21, 2014) (ordering *in camera* review); *N.Y. Times v. Dep't of Justice ("Patriot Act Case")*, 872 F. Supp. 2d 309, 318 (S.D.N.Y. 2012) (reviewing *in camera*).

I. **ATS Reports: The Government Has Not Addressed Plaintiffs' Legitimate Questions About the Nature of the ATS Reports Nor Shown That Disclosure of the Reports Would Reasonably Risk Circumvention of the Law Under Exemption 7(E)**

After several months of not being able to locate *any* responsive documents whatsoever, DHS eventually found two pages of ATS Reports. In their initial memorandum, Plaintiffs pointed out that DHS says virtually nothing about what these two pages are and yet the Government wants the Court to rubber-stamp the decision to withhold them. Among the questions Plaintiffs raised: "Is one about Mr. Chivers and the other about Mr. Bishop? When were the pages created—before the stops at JFK or after? Are they generic documents about the ATS factors or do they contain specific information about the Journalists? Do they include

---

the Journalists were not targeted, and only increases their suspicions about the unusual stops at JFK airport – *as they were leaving the country*. (Defendant's Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. R. Mem.") at 6 n.1 (emphasis added).)

information obtained from the questioning at the airport? Do they reflect conclusions drawn by DHS agents, or are they merely factual compilations? . . . ." (Plaintiffs' Memorandum of Law in Support of Their Cross-Motion for Summary Judgment ("Pl. Mem.") at 15.)

In its reply, DHS mocks "Plaintiffs' litany of questions" and merely answers one question by begrudgingly confirming that one page is a record responsive to Mr. Bishop's request while the other page is a record responsive to Mr. Chivers's request. (Def. R. Mem. at 6.) As for the other questions, DHS unilaterally declares, "nor is it necessary for CBP to provide this level of information about these documents to justify their withholding." (Def. R. Mem. at 6.)

That is not the law. Courts have held that averments and conclusory statements, such as these, do not suffice in demonstrating that disclosure could reasonably be expected to risk circumvention of the law. *See, e.g., Friedman v. United States Secret Serv.*, 923 F. Supp. 2d 262, 283 (D.D.C. Feb. 14, 2013) ("Conclusory statement of its decision to withhold information" failed to justify nondisclosure pursuant to Exemption 7(E)); *Elec. Frontier Found. v. Dep't of Defense*, No. C-09 05640 SI, 2012 U.S. Dist. LEXIS 137010, at *6 (N.D. Cal. Sept. 24, 2013) (same); *Feshbach v. S.E.C.*, 5 F. Supp. 2d 774, 787 (N.D. Cal. 1997) (same).

While answering Plaintiffs' questions would reveal no law enforcement secret, it would allow Plaintiffs and the Court to fairly assess whether DHS is complying with FOIA – specifically whether the kind of information in the documents, if disclosed, would permit circumvention of the law. In light of the gaps in DHS's papers and the possibility that the documents contain sensitive information, it is appropriate for the Court to perform an *in camera* review to determine whether some part or all of the two pages must be disclosed under FOIA. *See, e.g., Patriot Act Case*, 872 F. Supp. 2d at 318.

## II. Result Redactions: The Government Has Not Shown That Disclosure of the Result Redactions Would Reveal *How* Law Enforcement Investigates a Crime

The Government has also failed to meet its burden under Exemption 7(E) to show with certain specificity *how* disclosure of the Result Redactions—which the Government now concedes are "only a few characters long . . . presented in 'abbreviated form'"—would reveal a "technique or procedure" under Exemption (7)(E). (Def. R. Mem. at 2.) The phrase "techniques and procedures" refers to "*how* law enforcement officials go about investigating a crime." *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010) (emphasis added).

It is now conceded that only a few letters are withheld in the RSLT entries. While those codes may be *related to* a technique and procedure, the Government has not explained how they are likely to reveal "*how* law enforcement officials go about investigating a crime." (*See* Pl. Mem. at 10 ("Whatever lies beneath the redaction—it can be little more than some letters or numbers—is not connected on any given line to security sensitive information nor discloses any law enforcement technique").)

In response to that argument, DHS mainly reiterates the words "specific," "techniques," and "procedures" as if those incantations were some form of proof. (*See* Def. R. Mem. at 3 (stating "[t]he redacted information relates to 'investigative techniques used by CBP, including examination and inspection procedures . . . and the specific law enforcement techniques that CBP officers use while conducting secondary inspection").) DHS then boldly, and wishfully, asserts that these statements in its declarations "*amply* demonstrate" how this information reveals law enforcement procedures. (Def. R. Mem. at 4.)

Apparently aware that such empty assertions cannot carry the day, the Government finally levels with the Court about what would actually be revealed: First, "disclosure of this information would nevertheless reveal 'the *names of law enforcement databases* that were queried by CBP" and, second, that disclosure would reveal "'the specific *results of law enforcement database queries* that may prompt CBP to select certain travelers for further examination.'" (Def. R. Mem. at 2, 3 (emphasis added).) But disclosure of such information does not reveal either a "technique" or a "procedure," as those terms are understood under Exemption 7(E). (*See* Pl. Mem. at 9-11.) The *name of database* and the *results of a query* would not show *how* law enforcement goes about investigating a crime nor show anything about what information was fed into the query, what the database contains, or *how* the information was processed or analyzed. The codes are inert labels, not techniques or procedures.

### III. Secondary Inspection Reports: The Government Has Not Shown That Disclosure of the Secondary Inspection Reports Would Reveal Information That Is Not Already Generally Known to the Public

DHS also ignores its burden of showing that the techniques and procedures in the Secondary Inspection Reports are not generally known by the public. (*See* Pl. Mem. at 12-13.) An agency is entitled to invoke Exemption 7(E) only if the techniques or procedures are not *generally* known to the public. *See Rosenfeld v. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995); *Lamont v. Dep't of Justice*, 475 F. Supp. 761, 780 (S.D.N.Y. 1979). For example, in *Albuquerque Pub. Co. v. United States Dep't of Justice*, 726 F. Supp. 851, 857 (D.D.C. 1989), the court stated that the government should release "information pertaining to techniques that are commonly described or depicted in movies, popular novels, stories or magazines, or on television because disclosure of routine techniques do not increase the risk of circumvention of

the law." *See also ACLU Found. v. U.S. Dep't of Justice*, Nos. 86-6052, 866058, 2014 U.S. Dist. LEXIS 32615, at *20-*21 (S.D.N.Y. Mar. 11, 2014) (stating the information need only be "generally" known).

The Government does not deny that in the post-9/11 world the public now has a broad understanding of security protocols at airports. (*See* Pl. Mem. at 12.)[3] DHS and CBP officials have also discussed the targeting process for passengers in many public forums in the past, including congressional hearings and on CBP's public website, and the ATS database was also previously covered in the Federal Register. *See* 71 Fed. Reg. 212 (Nov. 2, 2006); 77 Fed. Reg. 99 (May 22, 2012).

Despite this evidence, DHS maintains "Plaintiffs point to no evidence, nor is CBP aware of any, that it is 'generally known' what particular law-enforcement databases CBP queries relating to passengers, or what particular results of those database queries may lead CBP to select a passenger for secondary inspection, or what investigative techniques CBP officers may use in conducting such secondary inspections." (Def. R. Mem. at 4.) That statement is simply untrue. The public is well aware that since 9/11 the government collects specific database information on individuals that may lead to further secondary inspections. *See infra* n.3.

In fact, despite what DHS is saying here, similar documents were released by the Government in a case settled just two years ago. *See House v. Napolitano*, No. 11-10852-DJC, 2012 U.S. Dist. LEXIS 42297 (D. Mass. 2012) (government disclosed numerous documents, including DHS "Lookout" report telling agents to stop Plaintiff as he entered the country at airport and reports on DHS agents' questioning of plaintiff).

---

[3] In addition to the publications cited in Plaintiffs' moving memorandum, *see, e.g.*, Ellen Nakashima, *Collecting of Details on Travelers*, THE WASHINGTON POST, Sept. 22, 2007; Michael Sniffe, *AP: Feds Rate Travelers for Terrorism*, THE WASHINGTON POST, Nov. 30, 2006.

In light of the Government's own revelations, DHS has not demonstrated that that the information is not generally known or that the disclosures will risk harm to national security.

## IV. *In Camera* Review is Appropriate Under These Circumstances

*In camera* review is appropriate in cases like this where "agency affidavits are insufficiently detailed to permit meaningful review of exemption claims; the number of records involved is relatively small; a discrepancy exists between an agency's affidavit and other information that the agency has publicly disclosed; and when the dispute turns on the contents of the documents, and not the parties' interpretations of the documents." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 307 (D.D.C. 2007) (quotation marks omitted); *see also, e.g.*, *New York Times*, 872 F. Supp. 2d at 315 ("*in camera* inspection is particularly appropriate where the number of documents is relatively small" (quotation marks omitted)).

The Government does not contest Plaintiffs' request for *in camera* review and every one of the above factors applies here. DHS's supporting declarations fail to meet the specificity requirements. Only 31 pages are at issue, most involving short redactions. The two declarations in this case, asserting a need for secrecy to protect national security, are hard to square with the reality that much is known by the public about airport security. Lastly, the dispute here largely turns on the factual contents of whether the documents would disclose any law enforcement *techniques* or *procedures* or, if disclosed, would reasonably risk circumvention.

More than that, as discussed in our moving memorandum of law, the courts play a special role in assuring that the Government is not acting in ways that impinge inappropriately on press freedom. The questioning here of two reporters on their way *out of the country* to cover a sensitive foreign policy matter raises obvious concerns that the stops were done for reasons other

than security. By conducting an *in camera* review, this Court serves an impartial arbiter making certain that First Amendment values are protected and proper procedures were followed.

## CONCLUSION

For all the reasons set forth here and in our moving memorandum of law, this Court should grant Plaintiffs' motion for summary judgment or, in the alternative, order DHS to submit the requested documents for *in camera* review to determine what materials can be released.

Dated: New York, New York
June 12, 2014

/s/ David E. McCraw
David E. McCraw
D. Victoria Baranetsky
Legal Department
The New York Times Company
620 8th Avenue, 18th Floor
New York, NY 10018
phone: (212) 556-4031
fax: (212) 556-1009
e-mail: mccraw@nytimes.com
*Counsel for Plaintiffs*